UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAITY RUILOVA, et al.,<br><br>                      Plaintiffs,<br><br>   v.<br><br>YALE-NEW HAVEN HOSPITAL, INC., et al.,<br><br>                     Defendants. | Civil Action No. 3:22-cv-00111-MPS<br><br>June 24, 2022 |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................... 2

    I.    Plaintiffs Fail to State a Claim for Imprudence Regarding the Plan's Recordkeeping Fees. ................................................................................................................................... 2

    II.    Plaintiffs Fail to State an Imprudence Claim Regarding the Active Suite. ......................... 4

    III.    Plaintiffs Fail to State an Imprudence Claim Regarding Other Investments. ..................... 6

    IV.    Plaintiffs' Challenge to "Total Plan Costs" Is Not a Cognizable Claim ............................. 8

    V.    Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty. .................................... 8

    VI.    Plaintiffs Fail to State a Claim for Failure to Monitor Fiduciaries or Co-Fiduciary Liability. ............................................................................................................................. 9

    VII.    The Board, Individual Board Members, and Individual Committee Members Should Be Dismissed as Defendants in this Lawsuit. ................................................................... 10

    VIII.   Plaintiffs Lack Standing. ................................................................................................... 10

CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                           **Page(s)**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   No. 19-cv-4618, 2022 WL 74002 (N.D. Cal. Jan. 8, 2022) ....................................... 5, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 10

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ......................................................................................... 5

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ...................................................................................................... 1

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ................................................................................................ 1, 2

*In re RCN Litig.*,
   No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) ............................................. 10

*J & J Sports Prods., Inc. v. Ferreiras*,
   No. 15-cv-6546, 2018 WL 6168557 (E.D.N.Y. Nov. 20, 2018) ................................... 2

*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
   541 F. Supp. 3d 496 (D.N.J. 2021) ............................................................................. 10

*Matney v. Barrick Gold of N. Am., Inc.*,
   No. 2:20-cv-275, 2022 WL 1186532 (D. Utah Apr. 21, 2022) .................................... 5

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ........................................................................................ 7

*Patterson v. Morgan Stanley*,
   No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .............................. 4, 5, 7

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................................... 1

*Riley v. Olin Corp.*,
   2022 WL 2208953 (E.D. Mo. June 21, 2022) ........................................................... 3, 8

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   No. 3:15-CV-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016) *aff'd*, 718 F. App'x 3
   (2d Cir. 2017) ................................................................................................................ 9

*Sacerdote v. N.Y. Univ.*,
   No. 16-cv-6284, 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) .................................................. 9

*Sacerdote v. New York Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018) ................................................................................... 3, 5

*Smith v. CommonSpirit Health*,
   No. 2:20-cv-95, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) .................................................. 9

*Smith v. CommonSpirit Health*,
   No. 21-5964, 2022 WL 2207557 (6th Cir. June 21, 2022) ............................................... passim

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .................................................................................................... 2

# **INTRODUCTION**

The allegations and claims in this lawsuit are substantially the same as those advanced by the same counsel in *Smith v. CommonSpirit Health*. The Sixth Circuit Court of Appeals earlier this week affirmed the dismissal of the *Smith* lawsuit because the allegations were insufficient to state a plausible claim under ERISA. *Smith v. CommonSpirit Health*, No. 21-5964, 2022 WL 2207557 (6th Cir. June 21, 2022) (copy attached as Ex. 1). The complaint here should be dismissed for the same reasons.

As the *Smith* decision makes clear, in order to survive a motion to dismiss, Plaintiffs bear the burden of alleging facts sufficient to establish that the claims they are raising are plausible. Reduced to its core, Plaintiffs' response is that this Court should excuse that burden. They argue that they should survive a motion to dismiss because they raise questions of "fact," and they seek to have this Court take a "holistic" approach so as to allow their claims to proceed based on a more lenient pleading standard. Doc. 66, Pls.' Opp. to Defs.' Mot. to Dismiss, ("Opp.") at 14, 19, 33.

The Court should reject Plaintiffs' invitation. To be sure, there is no special, more lenient standard for ERISA plaintiffs. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) ("On remand, the Seventh Circuit should consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in *Tibble*, applying the pleading standard discussed" in *Iqbal* and *Twombly*). If anything, a district court's gatekeeping function is even more critical in ERISA lawsuits to weed out meritless claims aimed at using onerous discovery costs to drive settlements. *See PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013). Indeed, the Supreme Court recently instructed district courts to conduct a "careful, context-sensitive scrutiny of" the allegations in ERISA cases, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and "give due regard to the range of

reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes*, 142 S. Ct. at 742. That is exactly what the Sixth Circuit did in *Smith* and, as in *Smith*, the Court should do the same here and dismiss Plaintiffs' Amended Complaint.[1]

## ARGUMENT

### I. <u>Plaintiffs Fail to State a Claim for Imprudence Regarding the Plan's Recordkeeping Fees.</u>

In order to state a plausible claim regarding the Plan's recordkeeping fees, Plaintiffs must accurately allege what the fees were that the Plan in fact paid. In their Opposition, Plaintiffs continue to misstate the Plan's recordkeeping fees through faulty calculations, despite documents properly before this Court that directly contradict those calculations. Plaintiffs' allegations are not plausible if contradicted by documents properly before the Court that establish the actual amount of the recordkeeping fee. *J & J Sports Prods., Inc. v. Ferreiras*, No. 15-cv-6546, 2018 WL 6168557, at *14 (E.D.N.Y. Nov. 20, 2018) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Plaintiffs also try to deflect the Court's attention from the actual amount of the recordkeeping fee by arguing that their recordkeeping fee calculation includes administrative fees, and "all these fees are paid by Plan participants, whether they are charged as 'recordkeeping' or 'administrative' fees." Opp. at 14. That is simply the wrong way to determine the recordkeeping fee. As noted in Defendants' Opening Brief, "administrative" fees include participant-specific fees incurred on an individual basis, such as one-time distribution or loan fees incurred at a participant's request. *See* Doc. 37-1 ("MTD") at 10. Plaintiffs' recordkeeping calculations that include the administrative fees are thus inflated and inaccurate.

---

[1] The Court should dismiss the Amended Complaint with prejudice. By Order dated April 29, 2022, the Court granted Plaintiffs leave to amend their Complaint, which they did, but specifically cautioned that the Court would not allow further amendments. Doc. 46.

Significantly, Plaintiffs cannot dispute that the contractual recordkeeping fee the Plan paid to Fidelity decreased during the proposed class period as set forth in the Opening Brief.[2] MTD at 10. In fact, Plaintiffs do not address the contractually-agreed recordkeeping fee at all. *Id*. Plaintiffs likewise fail to respond to the fact that the Plan's maximum fee during the class period is nearly equal to the range that the Amended Complaint deems reasonable. See MTD at 12.

Further, Plaintiffs must specifically allege which services were offered to the Plan and to comparator plans. *See, e.g., Smith,* 2022 WL 2207557, at *6; *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 294 (S.D.N.Y. 2018); *Riley v. Olin Corp.*, No. 4:21-cv-1328, 2022 WL 2208953 at *4 (E.D. Mo. June 21, 2022) (copy attached as Ex. 2). Plaintiffs have failed to do so – their Opposition does not rebut their failure to allege *any* specific facts regarding the services offered to the Plan here compared to their alleged "comparator" plans. They instead complain of lack of access to information about the Plan's recordkeeping fees, Opp. at 17-18. But their complaints ring hollow in light of the Plan agreements and disclosures that Defendants' attached to their Opening Brief. The Amended Complaint plainly contains no plausible allegations regarding the services Fidelity provided to the Plan or the services provided to the comparator plans, other than the hollow pronouncement that they are effectively the exact same services. MTD at 10, 17.[3]

---

[2] Plaintiffs try to excuse their own erroneous "facts" by suggesting that recordkeepers like Fidelity "manipulate their price reporting when it comes to recordkeeping and administrative fees." That accusation is speculative and unsupported. Opp. at 14. Fidelity certainly could not "manipulate" the recordkeeping fee reflected in its agreements with the Plan, which is clearly laid out in Defendants' Opening Brief and Exhibits. MTD at 10.

[3] Plaintiffs offer no defense of their meaningless comparison of the Plan's five-year average fees to the other plans' fees for 2020 only. *See* MTD at 15; Opp. at 18 n.7. Instead of rebutting Defendants' argument, they assert without explanation that Defendants "misrepresent" their allegations. Opp. at 18 n.7. Not so. *See* MTD at 15; Compl. ¶¶ 53, 54 n.5.

Across the board, Plaintiffs simply failed to move the needle on their excessive recordkeeping fee claim from mere possibility to plausibility. The Court should dismiss the claim.

### II.        **Plaintiffs Fail to State an Imprudence Claim Regarding the Active Suite.**

Plaintiffs' attempt to defend their allegations regarding the Active Suite are likewise without merit. As an initial matter, it is worth noting that the same counsel representing Plaintiffs in this case recently filed a complaint in another lawsuit wherein they allege the same Active Suite that they attack here as, in the other lawsuit, a prudent, "better performing alternative[]" to a different family of target-date funds. *See* Compl. at ¶ 90, *Dayak v. Reyes Holdings, LLC*, No. 1:22-cv-02974 (N.D. Ill. June 7, 2022), Doc. 1.[4] This confirms that the allegations in Plaintiffs' Amended Complaint in this case regarding the Active Suite are false and disingenuous.

Their challenge to the Active Suite does not cross the line from "possible" to "plausible" for three additional reasons.

*First*, Plaintiffs fail to allege proper comparators to the Active Suite. Plaintiffs first compare the Active Suite to the Index Suite in an attempt to argue that the Active Suite was 1) too costly, and 2) too risky. Opp. at 20; Am. Compl. ¶¶ 59-61. As to cost, Plaintiffs' allegations amount to the unremarkable proposition that actively-managed funds typically charge higher fees than passive funds because they require the work of active managers. *See Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019). Plaintiffs cannot sustain an imprudence claim by comparing the Active and Index Suites. MTD at 18 (quoting

---

[4] While the complaint in *Reyes Holdings* refers to the K6 share class of the Active Suite rather than the K share class the Plan here invested in, the price difference between the two share classes ranges from 5 basis points to just 15 basis points. *See* Fidelity, *Fidelity Pricing Options For Retirement Plans* at 5 (Apr. 30, 2022) https://institutional.fidelity.com/app/proxy/content?literatureURL=/9861765.PDF. The point though remains—the underlying investments are the same, and Plaintiffs' counsel touts the Active Suite as the prudence standard in one case, yet vilifies it here.

*Sacerdote*, 328 F. Supp. 3d at 313 n.114) (collecting cases).[5]  Indeed, in *Smith,* the Sixth Circuit rejected the very same arguments Plaintiffs make here, and, in doing so, aptly observed: "It's possible, indeed likely, that the absence of actively managed funds suited for risk-tolerant investors would be imprudent." *Smith*, 2022 WL 2207557, at *5.

Plaintiffs also fail to show why the other target-date funds on which Plaintiffs rely are appropriate comparators for the Active Suite.  *See* MTD at 25; Opp. at 24-26.  As noted in Defendants' Opening Brief, Plaintiffs allege nothing regarding the alternative target-date funds' asset allocations, investment strategies, or glide paths.  MTD at 25; Am. Compl. ¶¶ 78-79.  This is patently insufficient to support a claim for imprudence.  *See Patterson*, 2019 WL 4934834, at *11 (dismissing a claim that lacked "detail as to the extent of the investment's shortcomings or why the [] Fund is a comparable investment"); *Matney v. Barrick Gold of N. Am., Inc.*, No. 2:20-cv-275, 2022 WL 1186532, at *10 (D. Utah Apr. 21, 2022) (dismissing claims where "the actively-managed American Funds Target Date Retirement funds that Plaintiffs select for comparison have materially different investment strategies than the JPMorgan target date funds"). In fact, Plaintiffs' only allegations regarding the alternative target-date funds is that they are offered by other large managers in the target-date fund marketplace, Am. Compl. ¶ 78 n.18, and that they are "top competitors" for the Active Suite.  Opp. at 24.  But merely "labeling funds as 'comparable' or as a 'peer' is insufficient to establish that comparator funds are meaningful benchmarks." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 19-cv-4618, 2022 WL 74002, at *8 (N.D. Cal. Jan. 8, 2022).

---

[5] Plaintiffs assert that the two suites are comparable because the "crucial distinction" between them "is that the [Active Suite's] portfolio is comprised of funds designed to outperform market indices, while the underlying funds in the [Index Suite] track certain market indices."  Opp. at 20.  But this is precisely why the Active and Index Suites are inappropriate comparators: the two have "different aims, different risks, and different potential rewards that cater to different investors." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Smith*, 2022 WL 2207557, at *4 (quoting *Davis*).

*Second*, even if Plaintiffs' alternative funds were proper comparators, Plaintiffs' performance data is from artificially short timeframes, and is hindsight-based. The Opposition argues at length that trailing three-year and five-year timeframes are sufficient to assess a fund's performance. Opp. at 25-27. Plaintiffs never address the contrary authority—including a case *from this Circuit*—that Defendants cited holding the opposite. *See* MTD at 26; Smith, 2022 WL 2207557, at *4. Even if this Court were to accept Plaintiffs' three-year and five-year trailing returns, Plaintiffs do not dispute that they allege underperformance during *only* the fourth quarter of 2015, a snapshot of a period before their proposed class period even began. Am. Compl. ¶ 80; Opp. at 25-27. This renders Plaintiffs' defense of their allegations as available to Defendants' "in real time" all the more perplexing, since Plaintiffs make no allegations as to the Freedom Funds' trailing three-year or five-year performance *at any point* during the class period. Am. Compl. ¶ 80.

*Third*, Plaintiffs argue that the Active Suite's underlying investments were imprudent, but do not address Defendants' point that ERISA fiduciaries have no duty to monitor the underlying investments in a mutual fund. MTD at 23; Opp. at 23. Plaintiffs' failure to address this point, thereby conceding it, dooms their claims regarding the Active Suite's underlying investments.

### III. Plaintiffs Fail to State an Imprudence Claim Regarding Other Investments.

Plaintiffs defend their allegations regarding five other Plan funds[6] as "stark quantitative and qualitative indicia of imprudence," Opp. at 27, but in reality, these allegations suffer from the same defects as their Active Suite allegations.

---

[6] Plaintiffs purport to challenge the following five funds: the Parnassus Core Equity Fund; the Invesco Diversified Dividend Fund; AMG TimesSquare Mid Cap Growth Fund; the Fidelity High Income Fund; and the Lazard Emerging Markets Equity Portfolio. Am. Compl. ¶¶ 82-106.

Plaintiffs' Opposition simply makes conclusory allegations that their alternative funds are proper comparators. Am. Compl. ¶¶ 87, 92, 95, 100, 106; Opp. at 29. Merely labeling funds as comparable, without more, is insufficient to state a claim for imprudence. *Patterson*, 2019 WL 4934834, at *11 (dismissing a claim based on conclusory allegations that a fund "did not perform as well as a supposedly comparable investment" that lacked "detail as to the extent of the investment's shortcomings or why the [] Fund is a comparable investment"); *Anderson*, 2022 WL 74002, at *8 (similar).

Plaintiffs attempt to obscure their pleading failure by asking Defendants to provide "reasoning" that the "comparator funds are inappropriate." Opp. at 30. But that incorrectly flips the pleading standard – it is *Plaintiffs'* burden to plead a "meaningful benchmark" against which to compare the Plan's funds. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). They simply fail to do so.

Plaintiffs' performance allegations are likewise insufficient. As noted in Defendants' Opening Brief, Plaintiffs rely on cherry-picked performance data—including Morningstar ranks for a *single quarter*—for each of the five mutual funds they challenge. MTD at 24-25. Plaintiffs attempt to obscure this shortcoming by arguing that the Morningstar rank "is but one metric for assessing performance," citing to the Amended Complaint's bare historical returns data for each investment. Opp. at 30. Plaintiffs' sleight-of-hand here is transparent: the "comprehensive returns data" for each of the five Plan funds is not compared to that of *any* of Plaintiffs' alleged alternative funds. *Id.* In other words, Plaintiffs have not compared returns data of the five Plan investments at issue to the returns data for any other "meaningful benchmark." This Court, therefore, has no way to evaluate whether the five Plan mutual funds were imprudent as compared to Plaintiffs' alternatives.

In short, Plaintiffs' allegations regarding five of the Plan's mutual funds amount to complaints that those investments happened to be more expensive or happened to perform worse than Plaintiffs would have preferred. That is insufficient to support an inference of fiduciary breach, and Plaintiffs' claims should be dismissed. *Olin*, 2022 WL 2208953, at *7.

### IV.     Plaintiffs' Challenge to "Total Plan Costs" Is Not a Cognizable Claim.

Plaintiffs' Opposition, like the Amended Complaint, cites no legal authority to support their challenge the "total plan cost" paid by Plan participants. At bottom, Plaintiffs' "total plan cost" claim is an unabashed attack on active management. In the same breath, Plaintiffs acknowledge that ERISA does not mandate passive management, and then go on to criticize the "risk, cost, and expectation of return of [actively managed] investments." Opp. at 31. Plaintiffs' Amended Complaint simply articulates the unremarkable notion that a plan offering actively-managed funds, like the Plan here, may have higher fees than a plan offering only lower-cost index funds. *Smith*, 2022 WL 2207557, at *7 (dismissing claims related to total plan costs as total plan costs "is merely evidence that CommonSpirit offers a number of actively managed funds, and an imprudence claim based on this fee alone fails for the same reason that Smith's more general attack on active investments fails.") Higher-fee actively managed funds provide an increased upside potential for higher returns, as compared to index funds. *Id.* at *4. Plaintiffs' attempt to cast the Plan's overall costs as "excessive" thus fails to account for the "range of reasonable judgments" the Plan's fiduciaries may make—here, whether to employ an active or passive investment strategy—and should be dismissed.

### V.     Plaintiffs Fail to State a Claim for Breach of the Duty of Loyalty.

Plaintiffs' Opposition does nothing to cure the Amended Complaint's complete lack of allegations that any Defendant took actions *for its own benefit*, and thus Plaintiffs' duty of loyalty claim must be dismissed. Plaintiffs suggest that their imprudence allegations regarding

8

"high-cost investments" and "Fidelity's inflated fees" support their disloyalty claim, Opp. at 33, but Plaintiffs "must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017), *vacated and remanded on other grounds*, 9 4th 95 (2d Cir. 2021). Perhaps realizing the insufficiency of their allegations, Plaintiffs assert for the first time in their Opposition that "Defendants' actions were taken: (1) to save itself costs at the expense of Plan participants; or (2) to favor its recordkeepers over the Plan participants." Opp. at 33. But these allegations appear nowhere in the Amended Complaint, and Plaintiffs may not further amend their Complaint through an opposition brief. Moreover, even if Plaintiffs had alleged these facts in the Complaint, any incidental financial benefit to Fidelity is insufficient to support a disloyalty claim. *Sacerdote*, 2017 WL 3701482, at *6 (holding that a claim for breach of loyalty must allege that defendant acted "for the purpose of" benefitting itself or another entity).[7]

### VI.  Plaintiffs Fail to State a Claim for Failure to Monitor Fiduciaries or Co-Fiduciary Liability.

Plaintiffs likewise fail to state derivative claims because they have failed to state an underlying claim for breach of fiduciary duty, as discussed above. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-CV-1839, 2016 WL 7494320, at *11, *16 (D. Conn. Dec. 30, 2016) (dismissing co-fiduciary and monitoring claims where claim for underlying breach failed), *aff'd*, 718 F. App'x 3 (2d Cir. 2017). Moreover, Plaintiffs have also failed to meet the pleading standard required for both claims, instead simply repeating the elements of the claim, which is plainly insufficient under the applicable pleading standard. *See, e.g., id.* at *16 (dismissing co-

---

[7] Plaintiffs again attempt to cast this Court's evaluation of their breach of loyalty claim as a factual issue. Opp. at 33. As with all of the other legal issues Plaintiffs seek to obscure as "factual" to proceed to discovery, this Court should not abandon its obligation "to weed out claims that lack merit as a matter of law." *Smith v. CommonSpirit Health*, No. 2:20-cv-95, 2021 WL 4097052 at *7 (E.D. Ky. Sept. 8, 2021).

fiduciary claim where plaintiff failed to plead "requisite knowledge" of other fiduciaries' breaches).

### VII.  The Board, Individual Board Members, and Individual Committee Members Should Be Dismissed as Defendants in this Lawsuit.

Attempting to avoid dismissal of certain Defendants, Plaintiffs resort to the refrain that there are "fact" issues that make resolution of the issues premature.  Not so. Courts regularly decide at the pleadings stage whether the named defendants served as fiduciaries with respect to the actions at issue in the lawsuit. *See, e.g., In re RCN Litig.*, No. 04-5068, 2006 WL 753149, at *8 (D.N.J. Mar. 21, 2006); *Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 541 F. Supp. 3d 496, 509 (D.N.J. 2021).  Plaintiffs' allegations regarding each of these Defendants' fiduciary status are the same conclusory, "formulaic recitations" of ERISA's provisions that are insufficient to establish fiduciary status. Compl. ¶¶ 12, 14; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The time to dismiss these claims is now.

### VIII.  Plaintiffs Lack Standing.

Plaintiffs lack standing to challenge the funds in which they never invested because they could not have been injured by those funds' performance or fees. *See* MTD at 39-40.  Defendants acknowledge that there is a split of authority on this issue, but respectfully submit that the authorities they have cited on standing are better-reasoned and in keeping with the Supreme Court's directive in *Thole*.  *See id*.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: June 24, 2022

Respectfully submitted,

THE DEFENDANTS,
*Yale New Haven Hospital, Inc., the Board of Trustees of Yale New Haven Hospital, Inc., The System Investment Committee of Yale New Haven Health Services Corporation and System Affiliates, and the Retirement Committee of Yale New Haven Health Services Corporation and System Affiliates*

By: /s/ *William J. Delany*
    William J. Delany (admitted *pro hac vice*)
    Michael J. Prame (admitted *pro hac vice*)
    Elizabeth L. Woods (admitted *pro hac vice*)
    GROOM LAW GROUP, CHARTERED
    1701 Pennsylvania Avenue, NW, Suite 1200
    Washington, DC, 20006.
    Tel. 202.861.6643
    Fax 202.659.4503
    Email: wdelany@groom.com
    mprame@groom.com
    ewoods@groom.com

By: /s/ *Jonathan B. Orleans*
    Jonathan B. Orleans (ct05440)
    PULLMAN & COMLEY LLC
    850 Main Street
    P.O. Box 7006
    Bridgeport, CT 06601-7006
    Tel. No. (203) 330.2129
    Fax No. (203) 576.8888
    Email: jborleans@pullcom.com

*Their Attorneys*