## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KAITY RUILOVA, *et al.*, | Case No.: 3:22-cv-00111-MPS |
| Plaintiffs, | |
| v. | |
| YALE NEW HAVEN HOSPITAL, INC., *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CASE <u>CONTRIBUTION AWARDS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND................................................................................................................. 2

    A.    Procedural History ................................................................................ 2

    B.    The Settlement ...................................................................................... 3

    C.    Class Notice .......................................................................................... 4

    D.    Distribution of the Settlement Fund and Reaction of the Settlement Class.............. 5

    E.    Efforts of Plaintiffs and Class Counsel .................................................. 6

    F.    Independent Fiduciary Review ............................................................... 6

ARGUMENT ..................................................................................................................... 7

    A.    Certification of the Settlement Class Should be Maintained ................................... 7

    B.    The Settlement Warrants Final Approval ................................................ 8

        1.    The Settlement is Procedurally Fair..................................... 9

        2.    The Settlement is Substantively Fair .................................. 11

    C.    The Plan of Allocation Should be Approved ...................................... 18

    D.    The Court Should Award Attorneys' Fees and Class Contribution Awards .......... 19

CONCLUSION ................................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................. 7

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  2012 WL 2064907 (S.D.N.Y. June 7, 2012) ...................................................................... 25

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ....................................................................................... 25

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................... 20

*Carlson v. Xerox Corp.*,
  596 F. Supp. 2d 400 (D. Conn. 2009) ................................................................................ 23

*Detroit v. Grinell Corp.*,
  495 F.2d (2d Cir. 1974) ................................................................................................ 11, 18

*Edwards v. North Am. Power & Gas, LLC*,
  2018 WL 3715273 (D. Conn. Aug. 3, 2018) .................................................................. 8, 16

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  62 F.4th 704 (2d Cir. 2023) ............................................................................................... 15

*Flag Telecom*,
  2010 WL 4537550 ............................................................................................................. 17

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................................... 24

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) ..................................................................................... 20, 22, 23

*Hyland v. Navient Corp.*,
  48 F.4th 110 (2d Cir. 2022) ............................................................................................... 15

*In re AMF Bowling Sec. Litig.*,
  334 F. Supp. 2d 462 (S.D.N.Y. 2004) ............................................................................... 24

*In re AOL Time Warner ERISA Litig.* ("*AOL Time Warner*"),
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................. 16, 19

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................................................. 23

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...................................................... 18

*In re Facebook, Inc., IPO Secs. and Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................................... 18, 19

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 12

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......................................................Passim

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .................................................. 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2008) ...................................................................... 17

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 ............................................................................................ 19, 25

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 22, 23

*In re Nortel Networks Corp. Sec. Litigation*,
   539 F.3d 129 (2d Cir. 2008) ............................................................................. 20

*In re PaineWebber Ltd. P'ships Litig.* ("*PaineWebber P'ships*"),
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................... 10

*In re Prudential Sec. Inc. Ltd. P'ships*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 8, 12

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012) ....................................................... 12

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   2012 WL 3589610 (D. Conn. Aug. 20, 2012) .................................................. 18

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................ 21

*In re Sumitomo Copper Litig.*,
  146 F. Supp. 2d 436 (S.D.N.Y. 2001) ................................................................... 23

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................ 10

*In re Wachovia Corp. ERISA Litig.*,
  2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ...................................................... 12

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ...................................................... 21

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
  2016 WL 6542707 (D. Conn. Nov. 3, 2016) .......................................................... 8

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ................................................................................. 24

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................... 12

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................................. 20

*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ................................................................................... 15

*Menkes v. Stolt-Nielsen S.A.*,
  2011 WL 13234815 (D. Conn. Jan. 25, 2011) ................................................. 20, 24

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .................................................................. 9, 10, 11, 15

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ................................................................................. 17

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ............................................................................. 12

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ...................................................... 19

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
  818 F.2d 278 (2d Cir. 1987) ................................................................................. 24

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ............................................................................. 10

*Sines v. Service Corp. Int'l*,
  2006 WL 1148725 (S.D.N.Y. May 1, 2006) ................................................................. 24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 23, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................. 8, 16

*Wilson v. DirectBuy, Inc.*,
  2011 WL 2050537 (D. Conn. May 16, 2011) ................................................................. 18

## Statutes

29 U.S.C. § 1001 ................................................................. 1
29 U.S.C. §§ 1109, 1132(a)(2) ................................................................. 13

## Rules

Fed. R. Civ. P. 23(a) ................................................................. 7, 8
Fed. R. Civ. P. 23(b) ................................................................. 7, 8, 16
Fed. R. Civ. P. 23(e) ................................................................. Passim

## Regulations

Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with
  Litigation,
  68 Fed. Reg. 75,632 ................................................................. 7

## Other Authorities

4 Newberg Class Actions § 11.41 ................................................................. 16

Plaintiffs,[1] Kaity Ruilova and Eileen Brannigan, on behalf of the proposed Settlement Class and the Yale-New Haven Hospital and Tax Exempt Affiliates Tax Sheltered Annuity Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards (the "Motion"), pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Maintaining Certified Class for Settlement Purposes, Approving Form and Manner of Settlement Notice, Preliminarily Approving Plan of Allocation, and Scheduling Fairness Hearing entered on December 11, 2023 ("Preliminary Approval Order," ECF No. 99). Plaintiffs respectfully request that the Court issue an Order that: (1) approves the Settlement with Defendants, as memorialized in the Settlement Agreement dated November 17, 2023 (ECF No. 98-3); (2) maintains certification of the Settlement Class; (3) finds the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and fair, reasonable, and adequate; (4) approves the Plan of Allocation; and (5) awards attorneys' fees of 25% of the Net Settlement Amount, inclusive of expenses, and class contribution awards of $12,500.00 each to Class Representatives.  Defendants do not oppose this Motion.

## **INTRODUCTION**

The Parties have agreed to the Settlement in this representative action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for total relief of

---

[1] Plaintiffs are Kaity Ruilova and Eileen Brannigan.  Defendants are Yale New Haven Hospital, Inc., the Board of Trustees of Yale New Haven Hospital, Inc., the System Investment Committee of Yale New Haven Health Services Corp. and System Affiliates, and the Retirement Committee of Yale New Haven Health Services Corp. and System Affiliates (collectively, "Defendants," and, together with Plaintiffs, the "Parties").  Capitalized terms not defined herein share the meaning ascribed to them in the Settlement Agreement.

1

$1,000,000.00, which will provide a substantial recovery to Class Members.   In light of the favorable relief the Settlement provides, as well as the Court's Preliminary Approval Order, Plaintiffs and Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and request that the Court grant the Motion.   The significant efforts of Plaintiffs and Class Counsel in achieving the Settlement recovery warrant the requested awards of attorneys' fees, litigation expenses, and case contribution awards, each of which are well within the range regularly approved by courts in this Circuit.

On December 11, 2023, the Court entered the Preliminary Approval Order, which, among other things, maintained certification the Settlement Class, found that notice to the Settlement Class was warranted, and set a final approval hearing on May 28, 2024 at 10:00 a.m. *See generally* Preliminary Approval Order.  The Notice amply describes the terms of the Settlement, nature and history of the litigation, manner in which objections can be lodged, as well as the Plan of Allocation and anticipated requests for fees, expenses, and compensatory awards.  To date, no objections—to the Settlement or anticipated requests for fees, expenses, and case contribution awards—have been received by Class Counsel or the Settlement Administrator.

Since none of the circumstances warranting preliminary approval have changed, and because the reaction of the Settlement Class has been overwhelmingly positive, the Court should grant the Motion in its entirety.

## **BACKGROUND**

### A.    **Procedural History**

Plaintiffs filed the initial Complaint in this class action on January 21, 2022 (ECF No. 1), and Defendants moved to dismiss the Complaint on April 15, 2022 (ECF No. 37).  Plaintiffs filed the Amended Complaint in response on May 6, 2022 (ECF No. 56), and the Court denied Defendants' motion as moot (ECF No. 57).  Defendants then moved to dismiss the Amended

Complaint on May 20, 2022 (ECF No. 59).  The Court denied Defendants' motion to dismiss with respect to Plaintiffs' recordkeeping and administrative ("RK&A") fee claims and related failure-to-monitor claims, and granted the motion, without prejudice, with respect to Plaintiffs' claims relating to the Plan's investment lineup, the Plan's total cost, and the duty of loyalty, as well as Count I against certain Defendants.  (ECF No. 79).  Defendants filed their Answer to the Amended Class Action Complaint on March 29, 2023 (ECF No. 85) and the Parties moved forward with discovery.

The Parties stipulated to class certification on June 29, 2023 (ECF No. 90), and the Court certified the proposed Class and appointed Plaintiffs as representatives of the Class and their counsel as Class Counsel on July 28, 2023 (ECF No. 92).  The Parties engaged in settlement negotiations as the litigation proceeded, reporting the Settlement to the Court on October 17, 2023 (ECF No. 96).  The Parties worked diligently to document the Settlement in the Settlement Agreement.

**B.     The Settlement**

The Settlement provides that Defendants will pay $1,000,000.00 into a Qualified Settlement Fund, to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation.  *See* Settlement Agreement, §§ 1.37, 4, 5.2–5.4, Ex. B (Plan of Allocation).  In exchange, Plaintiffs' claims on behalf of the Plan and the Settlement Class will be released, as set forth more fully in the Agreement.  *See id.* § 7. The Settlement Agreement and the Preliminary Approval Order set forth the Notice Plan and describe Plaintiffs' anticipated requests for payment of Attorneys' Fees and Costs to Class Counsel and for Case Contribution Awards to the Class Representatives, all of which are subject to the Court's approval.  *See id.*, §§ 1.4, 1.9, 6.1, Ex. A (Settlement Notice).  In addition, the Settlement Agreement provides for the approval of the Settlement by an Independent Fiduciary.

*See id.*, §§ 1.29, 2.1.

The Settlement would provide significant and immediate benefit to the Settlement Class, while recognizing the complexity, risk, and delay associated with continued litigation. Plaintiffs and Class Counsel submit that the Settlement represents an exceptional result for the Plan and Settlement Class under the circumstances and warrants final approval.

**C.    Class Notice**

In accordance with the Preliminary Approval Order, Strategic Claims Services ("SCS") disseminated the Settlement Notice by electronic and/or first-class mail to the 38,790 identified members of the Settlement Class and the Former Participant Claim Form to each Class Member without an Active Account by January 11, 2024. *See* Declaration of Cornelia Vieira Concerning the Mailing of the Settlement Notice and Former Participant Claim Form ("Vieira Decl.") ¶ 4. The original list was run through the United States Postal Service national change of address service to obtain new address information prior to the initial mailing. *Id.* SCS re-mailed any Notices and Former Participant Claim Forms returned as undeliverable for which forwarding addresses were available. *Id.* ¶¶ 6–7. For those returned as undeliverable for which no forwarding addresses were available, SCS utilized Experian "skip tracing" to obtain a new address and re-mailed Notices and Former Participant Claim Forms to each individual for whom an updated address was discovered. *Id.* SCS re-mailed approximately 570 Notices and Former Participant Claim Forms that were initially returned as undeliverable or upon the request of Class Members. *Id.* ¶¶ 6–8.

Pursuant to the terms of the Settlement, SCS also established a website for the Settlement, which provides information about the case and relevant deadlines and also provides a number of pertinent documents, including the following: (i) Notice; (ii) Former Participant Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement and exhibits;

and (v) the Complaint.  *Id.* ¶ 9.  Furthermore, in accordance with the Settlement Agreement and

the Preliminary Approval Order, SCS established a toll-free telephone number and email address

to which members of the Settlement Class could direct questions about the Settlement.  *Id.* ¶ 10.

On March 5, 2024, SCS sent reminder post card by first-class mail and e-mail (when available)

to each Former Participant, Beneficiary, and Alternate Payee who did not return the Former

Participant Claim Form prior to the deadline for submission of the same.  *Id.* ¶ 11.

### D.     Distribution of the Settlement Fund and Reaction of the Settlement Class

26,411 members of the Settlement Class will automatically receive the benefit of the

Settlement.  *Id.* ¶ 14.  In addition, SCS has received 2,039 Former Participant Claim Forms to

date.  *Id.*  The deadline for submitting the Former Participant Claim Form was April 9, 2024.  *Id.*

After payments have been issued to Class Members, any amount remaining in the Settlement

Fund from uncashed checks after 180 days will be distributed back to the Settlement Fund to be

utilized as set forth in the Plan of Allocation.  Settlement Agreement, Ex. B (Plan of Allocation)

§ 1.13.  If there is any amount remaining in the Settlement Fund no sooner than 395 days after

the Settlement Effective Date, it shall be paid to the Plan for the benefit of the Plan's

participants.  *Id.* § 1.14.

To date, no objections to the Settlement or any of the related applications have been

lodged by members of the Settlement Class after effectuation of the Notice Plan.  Declaration of

Laurie Rubinow ("Rubinow Decl.") ¶ 8; Vieira Decl. ¶ 13.  To further ensure that the Settlement

Agreement is fair, reasonable, and adequate, as well as in compliance with ERISA's prohibited

transaction provisions, the Independent Fiduciary (1) reviewed pertinent documents to the

Settlement and interviewed lead counsel for both Plaintiffs and Defendants, as explained below.

*See* Rubinow Decl., Ex. B, at 1.  The Independent Fiduciary issued its report approving and

authorizing the Settlement on March 14, 2024.  *See Id.*, Ex. B, Ex. C.

**E.      Efforts of Plaintiffs and Class Counsel**

Plaintiffs and Class Counsel vigorously pursued relief on behalf of the Plan, and Defense Counsel vigorously defended against the allegations in the Complaint.  The Parties agreed to the Settlement only after meaningful motion practice, discovery, and arm's-length negotiations by experienced counsel.  *See* Rubinow Decl. ¶ 4.

Plaintiffs devoted significant time and effort with Class Counsel to research the facts of the case, reviewed filings, collected documents for anticipated discovery, and regularly conferred with Counsel about litigation strategy and the progress of settlement negotiations, culminating with Plaintiffs' authorization of the Settlement.  *Id.* ¶ 7.

Counsel and their professionals have spent, in the aggregate, over 752 hours in the prosecution of this case against Defendants, resulting in a lodestar of $391,671.00, with additional anticipated lodestar necessary to complete the representation in this matter.  *Id.* ¶¶ 11, 13, 17.  Counsel undertook to represent Plaintiffs and the Class on a contingent basis and advanced necessary litigation expenses without any guaranty of recovery.  *See id.*

**F.      Independent Fiduciary Review**

The Independent Fiduciary's report was provided to the Parties on March 14, 2024, and is being filed on the docket concurrently with this Motion.  *See* Rubinow Decl., Ex. B.  The Independent Fiduciary's report provides the Court another touchstone to assess the fairness of the Settlement and related applications.  The Parties cooperated fully to provide the Independent Fiduciary with the information necessary to evaluate the Settlement.  The Independent Fiduciary (1) reviewed pre-settlement documents filed with the Court, including the Complaint, Motion to Dismiss, Amended Complaint, Motion to Dismiss the Amended Complaint, the Court's Order granting in part and denying in part the Motion to Dismiss, and the Answer to the Amended Complaint; (2) reviewed the Motion for Settlement, Settlement Agreement, and the Preliminary

Approval Order; and (3) interviewed James Miller and Alec Berin of Miller Shah LLP, lead counsel for Plaintiffs, and William Delaney and Richard Smith, Jr., of Groom Law Group, Chartered, counsel for Defendants.  *See* Rubinow Decl., Ex. B, at 1.

Further, the Independent Fiduciary complied with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003 by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-30.  The Independent Fiduciary concluded that the Settlement meets the requirements of the Prohibited Transaction Class Exemption 2003-39, as amended.  *See* Rubinow Decl., Ex. B.  The Independent Fiduciary further concluded that an arm's-length Settlement was achieved after hard-fought negotiations between the parties and is reasonable, given the uncertainties of a larger recovery for the Class at trial and the value of claims forgone, and concluded that the requested attorneys' fees and contribution awards were reasonable in light of the effort expended by Plaintiffs and Class Counsel.  *See id.* at 3.

## ARGUMENT

### A.     Certification of the Settlement Class Should be Maintained

When the Court is presented with a proposed settlement in a class action, it must determine whether the proposed settlement class satisfies the Federal Rule of Civil Procedure 23 requirements for class certification.  *See* Fed. R. Civ. P. 23(e).  Specifically, a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.

The Preliminary Approval Order provisionally certified the Settlement Class based upon

finding that the elements of Rule 23(a) and 23(b)(1) were satisfied.[2]  (ECF No. 99).  None of the

circumstances that warranted provisional certification have changed.  Thus, the Settlement Class

should be maintained through entry of final judgment.

**B.      The Settlement Warrants Final Approval**

At this stage, the Court must determine whether the substance of the Settlement warrants

final approval.  "Courts in this Circuit recognize a strong juridical policy in favor of settlements,

particularly in the class action context."  *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,

2016 WL 6542707, at *6 (D. Conn. Nov. 3, 2016) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*,

396 F.3d 96, 116 (2d Cir. 2005)) (internal quotation marks omitted); *In re Prudential Sec. Inc.*

*Ltd. P'ships Ligi.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an

overriding public interest in settling and quieting litigation, and this is particularly true in class

actions.").  The Settlement is emblematic of the compromise favored by courts in this District

and Circuit.

Rule 23(e) requires judicial approval for the settlement of claims on behalf of a class.

Judicial review of a proposed class action settlement consists of a two-step process: (1)

preliminary approval; and (2) a subsequent fairness hearing and final approval.  *See* Fed. R. Civ.

P. 23(e).  "Courts often look to both procedural and substantive considerations in determining

whether a given settlement agreement is 'fair, reasonable, and adequate.'"  *Edwards v. North*

*Am. Power & Gas, LLC*, 2018 WL 3715273, at *9 (D. Conn. Aug. 3, 2018).  Fed. R. Civ. Pro.

23(e)(2) establishes the four "primary procedural considerations and substantive qualities that

should always matter to the decision whether to approve [a settlement] proposal": adequacy of

---

[2]The Settlement Class is materially identical to the litigation Class certified in the Court's July 28, 2023 Class Certification Order (ECF No. 92), in which the Court likewise found the prerequisites of Rules 23(a) and 23(b)(1) to be satisfied.

representation, existence of arm's-length negotiations, adequacy of relief, and equitableness of treatment of class members. *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. Pro. 23(e)(2) Advisory Committee's Notes to 2018 Amendment). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Id.*, at 242–43 (same). In considering the substantive fairness of the Settlement, the Court may consider the "useful framework" of the *Grinnell* factors (enumerated *infra*). *Id.* at 243.

### 1.  The Settlement is Procedurally Fair

As the Settlement Agreement satisfies the first two factors of Rule 23(e)(2)—adequacy of representation and arm's-length negotiation—it is procedurally fair and warrants final approval. *Id.* at 242. Indeed, the Parties were each represented by counsel experienced in complex ERISA litigation who negotiated the Settlement Agreement at arm's-length following meaningful discovery and motion practice.

### a.  Class Representatives and Class Counsel Adequately Represent the Class

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily [or finally] approving a settlement." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). The adequacy determination includes inquiries into both the plaintiff and his or her counsel. *See id.* Plaintiffs and Class Counsel satisfy these requirements. First, Plaintiffs' interests are aligned with those of all other members of the Settlement Class because they all suffered injuries of the same kind as a result of Defendants' alleged Plan-level conduct. Plaintiffs have actively and vigorously pursued relief on behalf of the Plan and Settlement Class since the investigation that led to the commencement of this action. Second, Class Counsel are "qualified, experienced, and able" to conduct the litigation, as demonstrated by their successful prosecution of numerous

9

complex ERISA actions and the result achieved here.  *See id*.

### b.  The Settlement is the Result of Good Faith, Arm's-Length Negotiations

As recent Second Circuit jurisprudence has clarified, because arms'-length negotiations are now one of the enumerated 23(e)(2) factors, it is inappropriate to apply a "'presumption of fairness [to settlement proposals negotiated at arm's length]' . . . because the rule 'does not suggest that an affirmative answer to that one [factor] creates a favorable presumption on review of the other three.'"  *Moses*, 79 F.4th at 243 (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019)).  Even so, the Settlement Agreement easily satisfies the 23(e)(2)(B) requirement because it was negotiated at arm's-length by adverse parties, each represented by capable counsel experienced in complex class action ERISA litigation.  During negotiations, the Parties communicated their respective positions and conducted independent analyses to support the Settlement.  *See* Rubinow Decl. ¶ 4.  The comprehensive motion practice, discovery exchanged, and extensive settlement negotiations in this matter demonstrate that there has been no collusion or complicity of any kind in connection with the Settlement or related negotiations.  *Id*.

Moreover, in determining the good faith of the Agreement, the Court should consider the judgment of Class Counsel.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.* ("*PaineWebber P'ships*"), 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Class Counsel have significant experience in similar litigation and are well-informed as to the specifics of this Action.  *See* Rubinow Decl. ¶

14. Accordingly, their judgment that the Settlement is in the best interest of the Settlement Class should be given considerable weight.

In sum, the Settlement Agreement is procedurally fair and warrants final approval.

### 2. The Settlement is Substantively Fair

The substantive fairness of the Settlement Agreement is established by its satisfaction of the last two Rule 23(e)(2) factors: the adequacy of relief provided to the class and the equitable treatment of class members. *Moses*, 79 F.4th at 244. In aid of the substantive fairness inquiry, courts in the Second Circuit may consider the *Grinnell* factors: (1) the complexity, expense, and likely duration of litigation, (2) reaction of class to settlement, (3) stage of proceedings and amount of discovery completed, (4) risks of establishing liability, (5) risks of establishing damages, (6) risks of maintaining class action through trial, (7) ability of defendants to withstand greater judgment, (8) range of reasonableness of settlement fund in light of best possible recovery, and (9) range of reasonableness of settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Detroit v. Grinell Corp.*, 495 F.2d 488, 463 (2d Cir. 1974).

### a. Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule 23(e)(2)(C), courts must consider the following:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). The adequacy inquiry under Rule 23(e)(2)(C) overlaps, in significant measure, with several of the *Grinnell* factors, "which help guide the Court's application of Rule 23(e)(2)(C)(i)." *GSE Bonds*, 414 F. Supp. 3d at 693.

***The costs, risks, and delay of trial and appeal.*** ERISA breach of fiduciary duty actions

are difficult to prosecute and "involve a complex and rapidly evolving area of law." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012); *In re Wachovia Corp. ERISA Litig.*, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011).  New precedents are frequently issued, and the demands on counsel and courts are complex, requiring the devotion of significant resources.  The prosecution of this action and the risks that Plaintiffs faced in establishing liability and damages as well as maintaining a class action through trial overwhelmingly support final approval.  Indeed, absent settlement, the Parties would proceed to contentious motion practice and a complex trial.  Even if Plaintiffs prevailed, it could be years before any recovery would be received in light of the likelihood of appeals.  Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'"  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).  Moreover, because continued litigation increases expenses, it could result in a smaller ultimate recovery to the Settlement Class.

Plaintiffs' pursuit of the Plan's alleged losses resulting from the course of conduct asserted in this Action began three years ago in 2021.  Since then, the Parties have acquired extensive knowledge and information about the claims and defenses relevant to this action, sufficient to evaluate the "the merits of Plaintiff[s'] claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiff[s'] causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  Class Counsel's thorough investigation, coupled with discovery and motion practice in this action, has afforded Class

Counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case.

The record in these proceedings and the law confirm the risks of establishing liability and damages.  In order to succeed on the merits, Plaintiffs would need to establish that Defendants' recordkeeping monitoring process was deficient, a position to which Defendants would certainly assert affirmative defenses.  Such defenses would have included, *inter alia*, arguments based upon the substantive and procedural prudence of Defendants' monitoring processes.  The litigation would likely have featured further dispositive motions, significant competing expert testimony, and other pre-trial motion practice concerning evidentiary and other issues, all of which pose risks to Plaintiffs' ability to establish liability.  Moreover, even if Plaintiffs were successful in establishing liability at trial, there is a substantial risk that a factfinder could accept Defendants' damages arguments and award less than the funds secured by the Settlement, or nothing at all.

In addition to the risks of establishing liability and damages, Plaintiffs face a risk of maintaining this Action as a class action through trial.  Consistent with ERISA §§ 409 and 502(a)(2), Plaintiffs bring their claims on behalf of the Plan and plead the same as class claims, and the Court certified a class.  *See* 29 U.S.C. §§ 1109, 1132(a)(2); *see also* ECF No. 56, at ¶¶ 7, 115–27; ECF No. 92.  While Plaintiffs are confident this Action would continue to satisfy Rule 23, there is a risk that circumstances or the law could change, and the Court could find a reason to decertify the class at a later stage.  The Settlement recognizes and alleviates that risk.

***The effectiveness of the proposed method of distributing relief.***  The Settlement Agreement and Plan of Allocation provide for a notice and claims process designed to ensure relief is effectively accorded to Settlement Class members.  Since the Settlement Class is

comprised of participants, former participants, beneficiaries, and alternate payees of a company

benefits plan, much of the data necessary to administer the Settlement is in the possession of the

Plan's recordkeepers.  Indeed, Participants with active accounts in the Plan need not even submit

a claim form to receive the relief to which they are entitled.  Administration of the Settlement

here will effectively "deter or defeat unjustified claims," without being "unduly demanding."

*GSE Bonds*, 414 F. Supp. 3d at 694 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend.,

sub. (e)(2)(c)).  In addition, "while the plan of allocation must be fair and adequate, it need only

have a reasonable, rational basis, particularly if recommended by experienced and competent

class counsel."  *Id*. (internal quotation marks omitted).  As discussed in greater detail below, the

Plan of Allocation provides for *pro rata* distribution of the Settlement Fund among Settlement

Class members according to the average size of their Plan accounts during the Class Period.  The

Plan of Allocation represents a reasonable method of ensuring "the equitable and timely

distribution of a settlement fund without burdening the process in a way that will unduly waste

the fund."  *Id*. at 695.

   ***The terms of the proposed award of attorneys' fees.***  As stated in the Notice distributed

to members of the Settlement Class, Class Counsel are requesting fees and expenses up to 25%

of the value of the Settlement (ECF No. 99, Ex. A, at 4).  These applications are subject to Court

approval and are consistent with amounts regularly awarded in complex litigation of this type.

Additionally, the Independent Fiduciary retained on behalf of the Plan considered these

applications in connection with its review of the Settlement and approval of releases by the Plan

and found them to be reasonable.  *See* Rubinow Decl., Ex. B, at 3.  Class Counsel are aware of

no agreements required to be disclosed under Rule 23(e)(3).

### b.  Equitable Treatment of Class Members

"Prior to approving a settlement, the court must take into account whether the 'proposal treats class members equitably relative to each other.'"  *Moses*, 79 F.4th at 244 (citing Fed. R. Civ. P. 23(e)(2)(D)).  Here, the Settlement Agreement does not give preference to any particular or category of Class Members, including the Class Representatives.  The Plan of Allocation will distribute the Settlement on a *pro rata* basis to Class Members according to the size of their Plan accounts, ensuring equitable execution.

Moreover, this mandate is "harmonious with, and promoted by, [the Second Circuit's] clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives."  *Id.* at 253 (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019); *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721 (2d Cir. 2023); *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022)).  The equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation from "having absent class members free ride on their efforts" *and* protects absent class members from excessive and unfair incentive awards.  *Moses*, 79 F.4th at 245 (internal citations omitted).

### c.  The Remaining *Grinnell* Factors Weigh in Favor of Final Approval

As discussed above, courts in the Second Circuit may consider the *Grinnell* factors when determining the substantive fairness of a proposed settlement.  Because several of these factors are addressed in the analysis under Rule 23(e)(2), the following discussion focuses on the relevant non-overlapping factors under *Grinnell*: (i) the reaction of the class to the settlement; (ii) the ability of Defendants to withstand a greater judgment; and (iii) the range of reasonableness of the Settlement in light of the best possible recovery and attendant risks.

***The reaction of the Class to the settlement.***  Members of the Settlement Class have the

opportunity to share their reactions to the Settlement, including by filing objections, pursuant to the Notice Plan.  SCA provided Notice to Class Members via U.S. mail and e-mail on January 11, 2024.  *See* Vieira Decl. ¶ 4.  To date, *no* Class Members have filed an objection to the Settlement, proposed attorneys' fees and expenses, or case contribution awards.  *Id.* ¶ 13.  While the Settlement Class was preliminarily approved under Federal Rule of Civil Procedure 23(b)(1), which does not allow for opt-outs, the absence of any objections indicates strong approval of the Settlement.  *See Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quoting 4 Newberg Class Actions § 11.41); *Edwards v. North Am. Power & Gas, LLC*, 2018 WL 3715273, at *10 (D. Conn. Aug. 3, 2018) (approving settlement where no objections and only seventeen opt-outs).

**The ability of Defendants to withstand a greater judgment.**  While there is no evidence that Defendants could not withstand a greater judgment, courts have regularly held that, "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]."  *GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re AOL Time Warner ERISA Litig.* ("*AOL Time Warner*"), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair," rather this factor "must be weighed in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund") (internal quotation marks omitted).  Accordingly, the Court need not find that Defendants could not withstand a greater judgment in order to conclude the Settlement is fair, reasonable, and adequate, and warrants final approval.

**The range of reasonableness of the Settlement in light of the best possible recovery and**

***attendant risks.***  "In considering these facts, the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2008).  In fact, courts in this Circuit have approved of settlements where the plaintiffs did not offer a damages estimate at all.  *See id*.  This is because "some risks would be attendant upon continuing to litigate." *GSE Bonds*, 414 F. Supp. 3d at 696; *Flag Telecom II*, 2010 WL 4537550, at *20 ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case.").  "[I]n any case, there is a range of reasonableness with respect to a settlement." *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Any such range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693.

Plaintiffs estimated the Plan's losses attributable to excessive RK&A fees by comparing the Plan's actual fees to the periodic reasonable market rate throughout the Class Period determined by Plaintiffs' experts based on a benchmark group of comparable plans.  *See* Rubinow Decl. ¶ 18.  The damages awarded to Plaintiffs in the event they proved liability would be subject to the factfinder's determinations with respect to several significant variables.  First, the factfinder must determine the reasonable market rate for the Plan's RK&A fees.  Defendants would, of course, argue for more conservative figures, and may offer an alternative comparator group that further reduces the damages calculation.  Second, the factfinder must determine the appropriate interest rate to apply, ranging from the conservative 1-year Treasury rate to the more aggressive S&P 500-return rate.  And all of these figures presuppose a finding of liability.

Plaintiffs and their experts have estimated realistically recoverable damages related to the

surviving recordkeeping claim range from $881,900 to $1,222,986, and realistically recoverable

damages range related to the Dismissed Claims range from $3,205,936 to $8,157,355 (assuming

complete reversal of dismissal and proof of total liability), depending upon the methodology and

assumptions employed and when brought to present value by applying a reasonable interest rate.

Accordingly, the Settlement recovery amounts to approximately 95% of the midpoint of

realistically recoverable damages related to the surviving recordkeeping claim and provides

meaningful consideration for the Dismissed Claims.  *Id.*

This recovery rate range sits comfortably (if not significantly above) within those

accepted by other courts in this Circuit.  *See, e.g.*, *GSE Bonds*, 414 F. Supp. 3d at 697 (13-17%);

*In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *6

(S.D.N.Y. Nov. 8, 2006) (10-15%); *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004

WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10-20%); *In re Sturm, Ruger, & Co., Inc. Sec.*

*Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (3.5%); *see*

*also Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590JCH, 2011 WL 2050537, at *13 (D. Conn. May

16, 2011) ("the Second Circuit has long held that even settlements which represent a fraction of

the best possible result may be appropriate in light of the risks associated with bringing such

claims") (citing *Grinnell*, 495 F.2d at 455 n.2).  Detailed calculations and backup information

concerning the Plan's losses were exchanged in connection with the settlement process and were

made available to the Independent Fiduciary.

In sum, the remaining *Grinnell* factors, in combination with the substantive fairness

factors under Rule 23(e)(2), warrant final approval of the Settlement Agreement.

**C.     The Plan of Allocation Should be Approved**

To warrant approval, a plan of allocation must be fair and adequate.  *In re Facebook,*

*Inc., IPO Secs. and Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018).  "The formula

18

established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*. "[W]hether the allocation plan is equitable is squarely within the discretion of the district court." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (citation omitted).

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class. This is comparable to plans approved by courts in analogous ERISA litigation and considers the relative strength of the claims. *See, e.g.*, *Garthwait v. Eversource Energy Co.*, No. 3:20-cv-00902-JCH (D. Conn.), ECF No. 205; *In re Marsh ERISA Litig.*, 265 F.R.D. 128 at 145; *In re AOL Time Warner*, 2006 WL 903236, at *17 (S.D.N.Y. Sept. 27, 2006) (plan of allocation provided "recovery to damaged investors on a pro-rata basis according to their recognized claims of damages."). The Plan of Allocation is consistent with the obligation of ERISA fiduciaries to treat plan participants alike and obviates any potential intraclass conflicts. In addition, the Plan of Allocation provides that distributions to Settlement Class members who are active participants of the Plan will be made by allocating recovery amounts automatically into their active Plan accounts, while distributions to former Plan participants, beneficiaries, and alternate payees will be made by check or tax-qualified rollover to an individual retirement account or other qualified employer plan. As such, the Plan of Allocation is fair, reasonable, and adequate.

**D.    The Court Should Award Attorneys' Fees and Case Contribution Awards**

**1.    Attorneys' Fees**

Courts may award reasonable attorney's fees that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In class action litigation, the attorneys who secure a recovery for a class are generally "entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  By awarding fees payable from the fund, the court spreads litigation costs proportionally among those who will benefit from the Settlement Fund.  *Id*.

The Second Circuit recognizes two methods by which attorneys' fees may be assessed: (1) the "percentage of the fund" method; and (2) the lodestar method.  *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Regardless of the method used, the court must find that the resulting award is reasonable in light of: (1) "the time and labor expended by counsel"; (2) "the magnitude and complexities of the litigation"; (3) "the risk of the litigation"; (4) "the quality of representation"; (5) the requested fee's relationship to the settlement; and (6) "public policy considerations."  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *McDaniel*, 595 F.3d at 423.

At bottom, "[f]aced with able opposing counsel, Class Counsel demonstrated its competence and experience in the field of [ERISA] litigation by causing the claims of the class to progress beyond several dispositive motions through to preliminary settlement and certification.  The sought award properly balances the policy goal of encouraging counsel to pursue meritorious securities litigation while protecting against excessive attorney's fees." *Menkes v. Stolt-Nielsen S.A.*, 2011 WL 13234815, at *5 (D. Conn. Jan. 25, 2011) (citing *In re Nortel Networks Corp. Sec. Litigation*, 539 F.3d 129, 132 (2d Cir. 2008)).  In light of these substantial efforts, the requested attorneys' fees of 25% of the Net Settlement Amount, inclusive of reasonable litigation expenses incurred and carried for the duration of the litigation, are warranted.

### a.      The Time and Labor Expended by Counsel

The time and labor expended by Class Counsel in this matter weighs in favor of granting

Class Counsel's request for attorneys' fees.  Class Counsel has spent significant time and considerable resources in the investigation, prosecution, and resolution of this action.  Moreover, the work in this case is not over; even if the Court grants final approval of the proposed Settlement, Class Counsel will continue to incur additional time and expend resources in overseeing the administration of the Settlement and in responding to inquiries and issues from members of the Settlement Classes.  *See*, *e.g.*, *Johnson v. Brennan*, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011) (recognizing that "the requested fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future").  Class Counsel will continue to represent the interest of the Plan and oversee administration of the Settlement.  *See* Rubinow Decl. ¶ 13.  All of Class Counsel's efforts in pursuing the litigation were undertaken despite the risk that Plaintiff would not prevail in this action, and that Class Counsel would therefore receive nothing for their time and efforts.  The "time and labor expended by counsel" in producing an excellent settlement therefore support the fee requested.  *See, e.g.*, *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).

Even if the Court were to consider Class Counsel's lodestar, it should find that the requested fee award is reasonable.  In fact, the requested fee award would produce a lodestar multiplier of 0.64, even before additional time administering the Settlement is accounted for.  In fact, a 2003 survey of 1,120 class actions confirmed that the lodestar multipliers averaged 3.89. *See* Attorney Awards in Common Fund Cases, 24 CLASS ACTION REP. 4 (2003).  Moreover, the Independent Fiduciary reviewed Class Counsel's lodestar in connection with its review of the Settlement and related applications and confirmed the reasonableness of the requested fees when considering the lodestar crosscheck.  *See* Rubinow Decl., Ex. B, at 3.

### b.      The Magnitude and Complexities of the Litigation

Similarly, the magnitude and complexities of the litigation weigh in favor of the Court approving the requested award.  As analyzed above, the claims hinge on numerous complex legal and factual issues under ERISA which require comprehensive evidentiary support and testimony. Class Counsel spent years developing and pursuing the claims in this action, which supports the fee request.

### c.      The Risk of Litigation

The risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement."  *Goldberger*, 209 F.2d at 54 (internal quotations and citations omitted).  The risk undertaken by Class Counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled.  *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 139-40 (S.D.N.Y. 2008).  This Action involves significant risk as to both liability and damages, given the complexity of the issues and vigorous defense.  The government was not involved, proving claims and damages would require expert testimony, settlement was considered thoughtfully and thoroughly in light of these challenges.  *See, e.g.*, *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving expert opinions.").  Being able to present such a favorable Settlement despite those risks tends to support an award of fees in the amount requested.  As a result, this factor weighs in favor of granting Class Counsel the requested fees.

### d.      The Quality of Representation

The four factor, the quality of representation delivered in this Action, is best measured by

the results achieved. *Goldberger*, 209 f.3d at 50. The Settlement represents a recovery to the Settlement Class which is well within the range of reasonableness in a case of complexity, magnitude, and risk. The nature of the opposition faced by counsel should also be considered in assessing the quality of Class Counsel's performance. *See In re Merrill Lynch*, 249 F.R.D. at 141. Here, the caliber of opposing counsel was of the highest order and required that Class Counsel deliver comparable representation. *See*, *e.g.*, *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 412 (D. Conn. 2009) (approving fee request where "the Class received high legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel"). Class Counsel has significant experience in complex ERISA litigation and brought their experience and resources to bear in prosecuting this action. *See* Rubinow Decl. ¶ 14. The ability of Class Counsel to obtain a substantial recovery for the Class Members under the circumstances of this litigation strongly favors the requested attorneys' fees.

### e.  The Requested Fee's Relationship to the Settlement

The fifth factor asks whether the requested attorneys' fees are reasonable and fair in relation to the Settlement achieved. *Goldberger*, 209 F.3d at 50 (citation omitted). This factor also supports the requested award. The requested amount of attorneys' fees and expenses, representing 25% of the total recovery to the Class, is well within the range of fees commonly awarded in other class action settlements in this Circuit. *See*, *e.g.*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (noting median fee of 25 to 28 per cent of the fund in ERISA cases); *In re Sumitomo Copper Litig.*, 146 F. Supp. 2d 436, 441-42 (S.D.N.Y. 2001) (awarding approximately one-third of settlement as attorney fee award in commodities case); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y.

2003) (approving fee award of one-third in securities class action); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (approving of fee award at 40% of the settlement fund).

### f.     Public Policy Considerations

Finally, there are meaningful public policy considerations that weigh in favor of granting Class Counsel's requested fee.  Protecting workers' retirement funds is of genuine public interest.  Private enforcement of ERISA's fiduciary duties, in the nature of this action, is a vital mechanism for protecting workers' retirement funds because the Department of Labor lacks the resources to police even a small fraction of the distributions made by plans across the country. Therefore, it is critical that remuneration in successful enforcement actions like this one is both fair and rewarding—to make certain that injured parties are represented by counsel capable of effectively fighting for their rights.  *See*, *e.g.*, *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004) (recognizing "the need to encourage [counsel for] plaintiffs to undertake worthy cases that vindicate the rights of injured [parties]"); *Sines v. Service Corp. Int'l*, 2006 WL 1148725, at *1 (S.D.N.Y. May 1, 2006) (counsel [should] receive full and fair compensation for their work lest an inadequate award serve as a disincentive to filing meritorious suits in the future").

Additionally, the Court may award reimbursement of reasonable out-of-pocket expenses incurred by counsel and customarily charged to their clients, as long as these "were incidental and necessary to the representation."  *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Courts in this District have found the types of expenses incurred by Class Counsel to be necessary for effective class action representation.  *See Menkes*, 2011 WL 13234815, at *5 (approving award of expenses for filing, research, and expert consultation, among other

categories). Moreover, Class Counsel's expenses are denominated by category in the relevant exhibit to the Rubinow Declaration and full records are maintained by Class Counsel. *See* Rubinow Decl., Ex. A.

In sum, all factors indicate that the relief granted by the Settlement Agreement is adequate. The adequacy of the relief suggests that the Settlement—including the request for attorneys' fees—is substantively fair.

### 2. Case Contribution Awards

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013). Where plaintiffs are involved in complex cases, a higher range of contribution awards may be sought. *See, e.g.*, *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding $50,000 to each of the three named class representatives); *In re Marsh*, 265 F.R.D. at 151 (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y.2003) (collecting cases and granting an award of $15,000 to class representative).

Plaintiffs were engaged in all phases of this complex litigation, which they commenced by providing information to Class Counsel and filing the initial complaint. *See* Rubinow Decl. ¶ 7. Plaintiffs remained active throughout the litigation, including by providing documents to counsel and answering discovery requests, participating in regular conference calls with Class Counsel, and reviewing pleadings and other court documents to stay apprised of developments in the litigation and fulfill their duties to the Class. *See id.* Plaintiffs participated in settlement

discussions on an ongoing basis and were regularly in touch with Class Counsel regarding the same.  *See id.*

Further, notice of Plaintiffs' intention to seek the requested case contribution awards was presented to the Settlement class and, to date, no member of the Settlement Class has objected to such awards or the amount, providing more support that the requested awards are reasonable. The Independent Fiduciary's report separately evaluated the requested case contribution awards and provided the Court an independent basis to determine reasonableness of such requests.  *See id.*, Ex. B., at 3.

The proposed compensation awards are reasonable and equitable, which supports a finding that the Settlement treats Class members equitably.

## **CONCLUSION**

Plaintiffs respectfully submit that the Court should grant final approval of the Settlement.

DATED: April 12, 2024                         Respectfully submitted,

*/s/ Laurie Rubinow*
James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
          lrubinow@millershah.com

James C. Shah
Alec J. Rubinow
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
          ajRubinow@millershah.com

Anna K. D'Agostino
MILLER SHAH LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: akdagostino@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com

*Attorneys for Plaintiffs, the Plan,
and the Settlement Class*

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Rule 7.1(a)(2), I certify that I conferred in good faith with counsel for Defendants prior to filing this Motion.  Counsel for Defendants stated that Defendants do not oppose the Motion.

*/s/ Laurie Rubinow*
Laurie Rubinow

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I caused the foregoing document to be electronically filed with the Clerk of Court, and upon the counsel of record using the CM/ECF system.

*/s/ Laurie Rubinow*
Laurie Rubinow